COURT OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS

 

 


 
 
  
 REYNALDO ADAMS,
  
                            
 Appellant,
  
 v.
  
 THE STATE OF TEXAS,
  
                            
 Appellee.
 
 
  
   '
     
   '
     
   '
     
   '
     
   '
     
  '
 
  
  
 
 
  
  
                   No. 08-10-00235-CR
  
 Appeal from the
  
 120th
 District Court
  
 of El
 Paso County, Texas
  
 (TC#20100D01531)
  
 
 


                                                                  O
P I N I O N

Reynaldo Adams appeals his conviction by
jury trial of possession of less than one gram of cocaine.  We affirm.

                                                               BACKGROUND








Based on a tip from a confidential
informant, that a tall, black male in his 20’s, known as R.J., was selling crack
cocaine from a residence, located at 10729 Opalstone, the Narcotics Division of
the El Paso Police Department, engaged in surveillance of that residence from
March 1, 2010 to March 18, 2010. 
Narcotics Detective Jose L. Ratliff testified he observed people arriving
either on foot or by car, and going to the house, knocking or otherwise entering,
and leaving after only a short while.  Based
on his training and experience, Ratliff believed the activity indicated
street-level narcotics dealing within the residence.  During his surveillance of the Opalstone
residence, Ratliff never observed Appellant enter or exit the home.  He also never observed any of the individuals,
later expressly identified as residents, entering or exiting the home.  After corroborating the informant’s tip, Ratliff
obtained a “no knock” search warrant for the Opalstone residence.

On March 19, 2010, Ratliff and a team of officers
forcibly entered the residence and encountered Appellant and three other
individuals inside the home.  Gil Kelner,
the homeowner and Appellant’s uncle, was found in the hallway.  Appellant’s five-year-old son was in the
living room and Mr. Kelner’s seventeen-year-old daughter was in the kitchen.  Appellant was found exiting the southeast
bedroom.  Appellant’s fiancée, Jessica
Williams, later arrived at the residence while police were still present.

During his search of the southeast bedroom
which Appellant was seen exiting, Ratliff observed money on the bed in plain
view.  Before searching the room further,
Ratliff called for a canine unit.  The
canine alerted to the odor of narcotics at several areas, including the money
on the bed, a safe located underneath a nightstand, a makeup bag next to the
nightstand, and underneath the bed where a shoebox was located.

On the nightstand in the southeast bedroom,
police found a Texas I.D. card in the name of Reynaldo Jesus Adams which showed
that Appellant resided at the Opalstone house. 
In the bedroom, police found mail addressed to Appellant at the
Opalstone address, as well as clothing belonging to both Appellant and his son,
a photo of his son and a poem entitled “Walking In Daddy’s Footsteps” taped to
a Scarface poster[1]
displayed on a wall.  At trial, Ratliff
testified that the southeast bedroom belonged to Appellant and his fiancée.

During the search
of the southeast bedroom, the police unsuccessfully tried to open a digital
safe located underneath the nightstand. 
Detective Juan C. Gardea asked Appellant if the safe belonged to him and
Appellant said, “Yes.”  At Gardea’s
request, Appellant unlocked the safe. 
Inside the safe, police found bundles of money wrapped in rubber bands,
a small bindle of cocaine, jewelry, including a pendant of the letter “R,” the title
to Appellant’s Cadillac[2]
and Appellant’s social security card, bank card, and temporary I.D.
permit.  Nothing identifying any of the
other Opalstone residents was found inside the safe.

In the southeast bedroom, in plain view on
top of the nightstand, police found a small
bindle of cocaine on the floor next to the nightstand, a razor blade with white residue, and a smoking pipe with
marijuana residue.  A small bag of
marijuana and a smoking pipe with marijuana residue were found inside of a makeup
bag next to the nightstand, and an unwrapped rock substance which field tested
positive for cocaine was found behind some tote bags up against a wall.  Ratliff testified that based on his training
and experience, razor blades are commonly used to cut crack cocaine.  The three bindles recovered from the
southeast bedroom, were later determined to be 0.52 grams of cocaine.

The only cocaine discovered in the residence
during the search was located in the southeast bedroom.  A total of $10,781 cash was located only in
the southeast bedroom.  Based on the
evidence collected at the residence, Appellant was arrested for possession of a
controlled substance.

Williams, Appellant’s fiancée testified that
Appellant did not live at the Opalstone residence and that she occupied the southeast
bedroom.  She stated that Appellant came
over every other day, but never stayed over, and that his son stayed with her
in the southeast bedroom on the weekends. 
Williams also testified that she purchased and owned the digital safe
that was found in the bedroom.  According
to Williams, she, Appellant, Gil Kelner, and J.W. McKenzie, Mr. Kelner’s son,
knew the combination to the safe.  Williams
explained that she kept Appellant’s I.D. cards, bank card, and important
documents at the Opalstone residence so that Appellant would not lose them, and
that the money found in the safe belonged to both her and Appellant and
constituted the funds they had been saving for their wedding.  She also explained that the money found in
the shoebox underneath the bed belonged to Appellant’s niece.[3]  On rebuttal, Detective Ratliff testified that
when he questioned Williams on the day of the search about the money located in
the southeast bedroom, Williams informed him that she had no knowledge of any
money in that bedroom.

After Appellant entered a plea of not
guilty, the jury found Appellant guilty of possession of less than one gram of
cocaine and sentenced him to eighteen months confinement in the state
jail.  This appeal followed.

DISCUSSION

Sufficiency of the Evidence

In Issues One and Two, Appellant argues that the evidence is
legally and factually insufficient to support his conviction.  Specifically, Appellant argues that
the evidence was legally and factually insufficient to support the jury’s
finding that he (1) had actual control, custody and management of the
contraband; and (2) that he had the requisite knowledge of the existing
contraband. We reject Appellant’s factual insufficiency claims because Texas no
longer recognizes factual-insufficiency claims. 
Brooks v. State, 323 S.W.3d
893, 895 (Tex. Crim. App. 2010) (stating that the legal sufficiency standard is
the sole standard that a reviewing court should use to evaluate whether the
evidence is sufficient to support each element of a criminal offense).  

Standard of Review

In reviewing the legal sufficiency of the evidence to support a
criminal conviction, we review all the evidence in the light most favorable to
the verdict and determine whether any rational jury could have found the
essential elements of the offense beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560, 573 (1979); Brooks,
323 S.W.3d at 895; Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim.
App. 2007).  The State does not
have to disprove all reasonable alternative hypotheses that are inconsistent
with the accused’s guilt for the evidence to be legally sufficient.  Wilson
v. State, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999); Geesa v. State, 820 S.W.2d 154, 161 (Tex. Crim. App. 1991).

The jury is the sole judge of the weight and credibility of the
witnesses.  Brooks, 323 S.W.3d at 899.  It
is the role of the jury to resolve any conflicts of testimony and to draw
rational inferences from the facts.  Hooper
v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).  It is not our role to determine whether the
evidence establishes guilt beyond a reasonable doubt.  Dwyer
v. State, 836 S.W.2d 700, 702 (Tex. App. – El Paso 1992, pet. ref’d).  It is our duty to determine if
the necessary inferences are rational by viewing all the evidence in the light
most favorable to the verdict.  Hooper,
214 S.W.3d at
16-17.

Possession of a Controlled Substance

A person commits an offense if he “knowingly or intentionally
possesses a controlled substance listed in “Penalty Group 1,” unless it was
obtained under a valid prescription or practitioner’s order.  Tex.
Health & Safety Code Ann. § 481.115(a) (West 2010).  Cocaine is listed as a controlled substance
under “Penalty Group 1.”  Id. § 481.102(3)(D).  Possession is defined as “actual care,
custody, control, or management.”  Tex. Health & Safety Code Ann. §
481.002(38) (West 2010).

“A person acts knowingly, or with knowledge, with respect to
the nature of his conduct or to circumstances surrounding his conduct when he
is aware of the nature of his conduct or that the circumstances exist. A person
acts knowingly, or with knowledge, with respect to a result of his conduct when
he is aware that his conduct is reasonably certain to cause the result.”  Tex. Penal Code Ann. § 6.03(b) (West 2011).  Proof
 of  knowledge
 is  an
 inference  drawn  by
 the  jury  from
 all
circumstances.  Dillon v. State,
574 S.W.2d 92, 94 (Tex. Crim. App. 1978).

To support a conviction for possession of a controlled substance,
the State must prove two elements beyond a reasonable doubt:  (1) the accused exercised actual care,
custody, control, and management over the contraband; (2) the accused knew the
substance he possessed was contraband.  Poindexter
v. State, 153 S.W.3d 402, 405
(Tex. Crim. App. 2005); Martin v. State, 753 S.W.2d 384,
386 (Tex.
Crim. App. 1988); Menchaca v. State, 901
S.W.2d 640, 651 (Tex. App. – El Paso 1995, pet. ref’d).

            Mere presence at
a location where narcotics are found is alone insufficient to establish a
finding of possession.  Evans v. State, 202 S.W.3d 158, 162
(Tex. Crim. App. 2006).  Possession of
the contraband need not be exclusive.  Harrison v. State, 555 S.W.2d 736, 737
(Tex. Crim. App. 1977).  When
the contraband is not in the exclusive possession of the accused then
additional, independent facts and circumstances must affirmatively link the accused to
the contraband.  Poindexter, 153 S.W.3d at 406.

An “affirmative link” may be shown to exist by either direct or
circumstantial evidence, and it must establish that the accused’s association
to the contraband was more than just fortuitous.  Brown v. State, 911 S.W.2d 744,
747 (Tex. Crim. App. 1995). 
Several factors have been found to show an affirmative link
between the accused and contraband.  See Cuong Quoc Ly v. State, 273 S.W.3d
778, 781-82 (Tex. App. – Houston [14th Dist.] 2008, pet. ref’d).  As applicable to the case before us, these
factors include whether (1) the accused was present when the search was
conducted; (2) the contraband was in plain view; (3) the contraband was found
in proximity and accessible to the accused; (4) the accused made incriminating
statements when arrested; (5) other contraband or drug paraphernalia was
present; (6) the accused owned or had the right to possess the place where the
drugs were found; (7) the drugs were found in an enclosed place; and (8) the
accused was found with a large amount of cash. 
Olivarez v. State, 171 S.W.3d
283, 291 (Tex. App. – Houston [14th Dist.] 2005, no pet.).  The actual number of factors present is not as important as the
logical force they have in establishing the commission of the crime.  Id.

Evidence of Possession

Appellant argues that the State was required to exclude all
alternative reasonable hypotheses that Appellant was entirely unaware of the
presence of cocaine.  However, in order
for the evidence to be legally sufficient, the State does not need to disprove
all reasonable alternative hypotheses that are inconsistent with the accused’s
guilt.  Wilson, 7 S.W.3d at 141; Geesa,
820 S.W.2d at 161.  Appellant also
contends that the State failed to prove sufficient affirmative links to allow
the jury to conclude beyond a reasonable doubt that Appellant had actual,
control, custody and management of the contraband and that he knew the
contraband existed.  However, it
is not the number of links that is dispositive, but rather the logical force of
both the direct and circumstantial evidence. 
Evans v. State, 202 S.W.3d
158, 162 (Tex. Crim. App. 2006).

Several of the affirmative links exist in
the present case.  Here, the
police received a confidential tip that a man called R.J. was selling narcotics
from the Opalstone residence.  The Appellant’s
first and middle name are composed of those same initials.  When the police executed the search warrant,
Appellant was seen exiting the southeast bedroom and was present when the
police conducted the search.  The
police recovered three bindles of cocaine which were enclosed in the southeast
bedroom.  The bindle found in plain view
on the floor next to the nightstand and the bindle found enclosed in the safe
were accessible to Appellant.  Appellant
told Detective Gardea that he owned the safe found in the southeast bedroom and
he unlocked it for Gardea.  Other narcotics
and drug paraphernalia were found in the southeast bedroom including a razor
blade with white residue and a smoking pipe with marijuana residue.  Detective Ratliff testified that razor blades
are commonly used to cut crack cocaine.  The
contraband located on the nightstand was visible and accessible by Appellant.  See Joseph v. State,
897 S.W.2d 374, 376 (Tex. Crim. App. 1995) (the presence of drug paraphernalia
in home with contraband supported conclusion that defendant knowingly possessed
cocaine).

The police also found mail addressed to
Appellant at the Opalstone address which included a notice of denial on
Appellant’s application for food stamps dated February 25, 2010, twenty-two days
before the search was conducted.  Clothing
of both Appellant and his son were found in the bedroom.  In addition, the only money located in the
Opalstone residence was found in the southeast bedroom and it was a large
amount of money ($10,781).  The jury was
entitled to believe this evidence and disbelieve defense testimony that
Appellant did not live or stay at the Opalstone residence and that part of the
money found in the bedroom had been saved by Appellant and Williams for their
wedding while the other part belonged to Appellant’s niece.  Margraves
v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000) (the jury can accept or
reject all or part of the evidence presented); Hooper, 214 S.W.3d at 13 (we defer to the jury’s responsibility to resolve conflicts, weigh
evidence, draw reasonable inferences from the evidence).

Based on the evidence a reasonable jury
could infer that Appellant lived at the residence and that he had the right to
possess the southeast bedroom where the cocaine was found.  Hooper,
214 S.W.3d at 13.  The jury could also have reasonably inferred
that Appellant owned the cocaine that was located in the safe.  Id.;
see also Thomas v. State, No. 05-00-01528-CR, 2002 WL 15872, at *1 (Tex.
App. – Dallas Jan. 08, 2002, pet. ref’d) (rational jury could have found that defendant
knowingly and intentionally possessed cocaine with intent to deliver where
evidence showed the safe that contained cocaine was found in plain view, defendant
had a key that opened safe, and defendant was the only person who came out of
bedroom).

Viewing the evidence in the light most
favorable to the verdict, we find that a rational jury could have found, beyond
a reasonable doubt, that Appellant knowingly possessed less than a gram of
cocaine.  Jackson, 443 U.S. at 319; Brooks,
323 S.W.3d at 895.  Therefore, we hold
that the evidence was legally sufficient to sustain Appellant’s conviction for
possession of a controlled substance in an amount less than a gram.  Issues One and Two are overruled.

Admission of Evidence at Trial

In the sections of his brief listing the
issues presented on appeal and in the summary of the argument, Appellant includes
a third issue which challenges the trial court’s admission of testimony offered
by the State to show that Appellant had knowledge of the existing contraband.  However, Appellant’s brief entirely fails to
provide any argument or authority in support of this issue.  Because Appellant has inadequately briefed
the issue, nothing is presented for our review, and we find that the issue has
been waived.  Tex. R. App. P. 38.1(i); Valadez
v. Avitia, 238 S.W.3d 843, 845 (Tex. App. – El Paso 2007, no pet.) (failure
to adequately brief an issue results in waiver).  Accordingly, Issue Three is overruled.

CONCLUSION

We affirm the trial court’s judgment.

 

                                                                        GUADALUPE
RIVERA, Justice

July 25, 2012

 

Before McClure, C.J., Rivera, J., and Antcliff, J.

 

(Do Not Publish)











[1]
A poster of Bob Marley was also displayed in the southeast bedroom.  Ratliff testified that in in his experience
it was common to find such posters when searching a house with a warrant to
search for narcotics.





[2]
The car title was not in Appellant’s name, but Ratliff testified that Appellant
told him that he purchased the car from the individual named on the title.





[3]
On the defense’s behalf, Appellant’s niece, Tanika Tate, testified that she
gave Williams $2,500 in cash to hold for her.